All was previously announced and the times will be as allotted to counsel. The first case today is number 161770, United States v. Shane Parker. Thanks. Thanks. Good morning, your honors. May it please the court, my name is John Amabile and I represent Shane Parker, the defendant appellant in this case. And I would ask the court to reserve one minute of my time for rebuttal. Just one? Yes, your honor. Okay. In this case, we cannot say with confidence that Shane Parker's conviction wasn't the result of racial prejudice on the part of the sitting jury. Because the court, the district court, refused the reasonable request to conduct individual voir dire on the issue of racial prejudice. What's our standard of review? The standard of review is abuse of discretion, your honor. And I thought we had held in the Gallin case and in the Brown case that in the absence of special circumstances that a judge was not required to use individual voir dire. Well, your honor. I mean, haven't we held that? The holding in that case was, as your honor has set forth, I would state that two things. Number one, I believe that the facts of this case are distinguishable from that case. And number two, I think that the recent Supreme Court decision in Pena-Rodriguez v. Colorado substantially affects the viability of that holding. But Pena-Rodriguez isn't a jury selection case at all. No, it isn't, your honor. It's a case decided this spring. And it details the importance of the deleterious effects of racial prejudice. No one is doubting that. But the judge in this case, Judge Saylor, did query the jury about racial prejudice. He just chose to use a group voir dire rather than an individual voir dire, which is the norm. And he went to the extra length of soliciting from defense counsel suggestions about what questions might be posed in that group voir dire. And he followed those suggestions. Your honor, first of all, he did not completely follow those suggestions. I filed a written request which contained five questions and asked that they be conducted individually. Frankly, your honor, I don't mean to interrupt your honor, but the idea that you can ask a group of potential jurors whether any of you are racially prejudiced and expect them to come forward is not a reasonable expectation. On the issue of racial prejudice, if you do not query the jurors individually, you will not get truthful and frank answers to those questions. What I understand the rule you're trying to adopt is the idea that in any case in which voir dire is required because of a concern about racial prejudice, it must be done individually. Yes, your honor. I understand the logic of it. What's the presidential authority that you would say for that? For one thing, I think you can again look at Pena Rodriguez. Did you raise that argument in your brief to us? Yes, I did. I did in my reply brief. That decision had not been issued at the time that I filed the brief. I need to pin down. Are you saying that whenever there's a black defendant that we need to do individualized voir dire? I would suggest that when there, first of all, I think that should be the rule. But I think under the present state of the law, if there are any circumstances, special circumstances, and in this case I would suggest to the court that there were. What about Asian? Absolutely, your honor. What about white folks? Well, your honor, I don't think white folks are subject to the same kind of explicit prejudice that historically people in the minority communities have been subject to. What about religious affiliation? What about a Jewish defendant? Your honor, again, if that issue was part of the facts of the case, then yes. But what would be part of the facts of the case? Race wasn't part of the facts of this case. Well, your honor, I suggested race. Excuse me. Excuse me. What if a lawyer comes in and says, I'm worried, Judge, my defendant is Jewish and some people have very unattractive stereotypes about Jewish people. I request individual voir dire. Why shouldn't that be granted as readily as a request for individual voir dire of African American jurors? Your honor, I think it should be. I would argue that if a litigant feared that that would infect the jury deliberation process and have a reasonable ground for requesting it, it should be. I thought you were making, at least as I read your brief, a somewhat narrower argument. Well, I am. I hate to say that it was narrow, but the narrow argument that I thought you were making was that even though individual voir dire is not required any time there is a minority defendant, the nature of the facts of this case made this a case in which voir dire with respect to racial bias was required. That is the argument. As long as that's true, it has to be individual voir dire. But the premise of that is that this is a case in which voir dire concerning racial bias was required. Yes, your honor. So what's the case for making that point? Well, there are two Supreme Court cases that set forth two different standards. One is a significant likelihood of racial prejudice, and I think that's the Restaino case. And I believe that in this case there were facts that made out that standard. Namely, he's charged with a firearm trafficking offense interstate between the state of Massachusetts and New Hampshire. The facts of the case implicated ideas that he and the principal in this particular scenario were involved in drug trafficking activities and gun trafficking activities. The principal had solicited Caucasian drug addicts in the state of New Hampshire to purchase the firearms. And so there was a cross-racial nature to the procuring of the people to assist with the crime as well as the fact that the atmosphere surrounding the trial was particularly racially charged. And that was placed on the record. What's the evidence of that? The evidence of that was it occurred during the midst of the presidential campaign, which was an incredibly racially polarizing event. I take it there's nothing in the record indicating that that claim, general racial polarization, was reported in the press or in the public with respect to this particular case? It wasn't related directly to this particular case. This case had no publicity. So the presidential campaign you have in mind is 2016? That's correct, Your Honor. And that campaign was somehow more racially polarized than 2008 or 2012? Absolutely, yes, Your Honor. I think there are a lot of President Obama's people who wouldn't agree with that. Well, I would suggest to you, Your Honor, that that was placed on the record. This happened right in the heels of what was essentially a race riot. The cases that you describe as setting forth the standard when there are specific facts, they don't look to general background societal events. Don't they all tie it to the concerns about the particular facts of the case? They do, Your Honor. So you're now asking us to conclude that notwithstanding that those cases do that, we should read them to apply to general background effects about a case that had no publicity and which there was no indication that that general background concern was tied to understandings of this particular case? Your Honor, yes. And I think that's just based on logic and common sense. So your thought is that white jurors would be more inclined to think that because these were African-Americans engaging in this cross-jurisdictional arms selling that they would be more likely to be guilty? Yes, Your Honor. Yes. I think it plays into racial stereotypes. And is that because the nature of the people that they were, or at least your defendant was relying on to carry out the scheme were white persons who were addicts? That's part of it, Your Honor, yes. Do we know that the persons he was relying on were in fact white? Yes, Your Honor. They testified. They were cooperating witnesses and testified against him at the trial. Did they also testify that they were addicts? Yes, Your Honor. My time is up, so if there are no other questions, I had reserved one minute. Yes, thank you. Thank you, Your Honors. Good morning, Your Honor. Alexia DiVincentis on behalf of the United States. Would you speak up, please? Yes, I'll hold this a little closer. Alexia DiVincentis on behalf of the United States. May it please the Court. I'd like to begin by just very briefly touching on the issue reached by my opposing counsel here. And I'd like to note that there is simply put no authority in support of Parker's proposition that a district court here was required to conduct individualized questioning of the prospective jurors. Although there are certainly circumstances in which a federal court is required to make inquiry regarding potential racial bias, it is the government's position that this was not such a case. But even if it were, Parker cites no case law and the government is aware of none that would suggest that the district court was required to ask those questions individually. Can I just ask, is there a case that has held that voir dire on racial bias is required? No, Your Honor. There's no hitting that. No, that's correct, Your Honor. No, there's no such case. And in fact, the only court of appeals known to have directly addressed the issue reached precisely the opposite conclusion. In United States v. Hussaini, cited in the government's brief on, I believe, page 18, the Seventh Circuit expressly held that a district court does not abuse its discretion in determining that posing questions to jurors as a group is sufficient to identify any individuals with whom follow-up is necessary. And I would submit that the result should be no different here. Judge Celia, to your point, the standard here… Maybe I wasn't totally clear. I had thought it would be fair to read the precedent as at least suggesting that in a case in which there is sufficient special circumstances indicating racial bias, it might be required to do voir dire on the question of racial bias. Certainly, Your Honor. Required to conduct voir dire. In the cases that have held that, has the voir dire ever been conducted generally? Certainly, yes, Your Honor. In virtually all of those cases, that does tend to be the standard practice. In the particular cases that have held in a circumstance that voir dire was required, not that a district court judge chose to do it, but that there's a legal holding that an inquiry into racial bias was required, in those cases did the voir dire then involve just a general questioning? No, in those cases there was no voir dire questioning at all. I think the question is, after it was held that voir dire was required, was the district court required then to do an individual voir dire or was a group voir dire deemed sufficient? Or is the precedent just silent on that second stage of the question? The precedent is generally silent on that second stage of the question. That sort of just opens the question, not to say this case is necessarily one where you might find that voir dire on racial bias is required, but it does seem there's some logic to the idea that if an inquiry into racial bias is required at voir dire, the idea that a sensible way of doing the voir dire is in a group fashion seems, I mean you can certainly see why one might doubt that that's a particularly effective way of figuring out whether there's racial bias. And it doesn't seem to me a particularly good analogy to say, well that's how we do it with respect to whether people could be able to put aside pre-trial publicity. Because that's just a different kind of question than whether I'm willing to say in front of my fellow jurors, I'm biased. Certainly, Your Honor. The district court directly addressed the argument that Parker put forth here and that Your Honor is noting now, which is the suggestion that jurors are more likely to reveal their potential biases when asked individually. And in addressing that argument, the district court made the point that it's far from clear that, in fact, individualized questioning is going to be more conducive to the revelation of biases. You can imagine. But that seemed to me a pretty weak answer in the following sense. That's an answer that even individual voir dire might not be particularly effective. That might be true, but why is that then a good reason to do something that would be less effective? Well, Your Honor, here I would point to the discretion that is traditionally afforded to district courts in determining the nature and extent of the voir dire that is required in a given case. And on that point, I would note that what the district court was required to do here was not to conduct what in Parker's estimation might have been the best voir dire. Rather, it was required to conduct a voir dire that created reasonable assurances that racial prejudice would be identified and rooted out if present. And I would submit that the voir dire conducted here did precisely that. The district court asked not just one, but, in fact, three different questions regarding potential racial biases. And it did so only after emphasizing to jurors their duty of candor with the court. And, moreover, lest there be any concern that perhaps an individual juror may not wish to raise his or her hand in response to questions regarding race specifically, the district court also posed more general questions, asking jurors to come forward if they had any doubts for any reason that they might be able to be impartial here. And especially under an abuse of discretion standard, I think the district court here was well within its discretion in conducting the voir dire that it did. So the recent Supreme Court case, the Pena-Rodriguez, I believe is the name, isn't that sort of proof positive that generalized voir dire failed to root out the racial bias? Well, Your Honor, actually, in that case, there was no questioning during voir dire regarding racial biases at all. And, certainly, Pena-Rodriguez stands for the proposition that district courts must remain vigilant in protecting the jury deliberation process from potential racial bias. So there certainly were generalized questions in that case as to whether there was anything that would make it impossible for you to fairly and without bias render judgment in this case. And at least that general question didn't root out anything. Yes, Your Honor, there were general questions. But unlike here, those general questions were not preceded by specific questions that highlighted the need to, notwithstanding the difficulties of potentially admitting one's racial bias, to do so given the right of the defendant to have a fair and impartial jury. And, again, addressing Pena-Rodriguez specifically, again, to state the obvious, that case simply Did the idea of written individual questionnaires ever come up? I mean, that's how we used to deal with it in the state system. You submit written questionnaires that were specifically aimed at probing the issue of whatever bias was at issue. To my knowledge, Your Honor, that was not a topic of discussion here. It certainly doesn't appear in the record that that was proposed and in any way resisted in this particular case. To just briefly address before concluding the issue of the other acts' evidence here, on that point, I would simply note that contrary to Parker's characterization of the record, the evidence of the other transactions did not in any way, shape, or form overwhelm the conduct of trial here. A review of the record reveals that over the course of a five-day trial involving 15 different witnesses, the evidence of the other firearms elicited by the government was limited largely to the testimony, the direct testimony of one particular witness and the introduction of the Form 4473s to corroborate his testimony. Moreover, when that evidence was discussed, the focus wasn't on the additional firearms specifically, but rather on two specific transactions. Unless the Court has any further questions regarding that particular issue, I would simply highlight that this Court has routinely held that it will disturb a district court's careful balancing of the 404 and 40B factors, only in extraordinary circumstances, and those circumstances simply weren't present here. Thank you. Thank you, Your Honor. Your Honors, I'd just like to add two things. In terms of the issue of abuse of discretion, the district judge said that this case wasn't serious enough to give the time-consuming and resource-consuming individual a voir dire. That, in this case, there were 50 people in the veneery. It would have taken an hour or maybe two. And my client, Shane Parker, ended up with a 60-month prison sentence. So I think that sets forth an abuse of discretion. Now, I would also like to say to the Court in conclusion… One more thing, and I'll give you a couple of extra moments. It seems intuitively correct that someone might be more willing to admit to racial bias individually as opposed to in a group dynamic. But was there any specific studies presented to the district court to that effect? You know, again, we can look at Peña Rodriguez on that, where they specifically hold and acknowledge the stigma that's associated with admitting to being a racist. You're not going to raise your hand. That's not going to happen. Let's be real about this. Now, the fact of the matter is, Your Honor… The irony of the last election is that people say that the current president empowered people to wear racism as a badge of pride, and therefore they may have been more likely during the course of that election to have admitted it. They wear it, but they don't admit it, Your Honor. And I would also want to just conclude with this. The federal criminal judicial process statistically is biased against African Americans, and we should do something about it. And one thing we can do is we can root out racist potential jurors so that they're not sitting in judgment of an African American. And that is all that we are asking the Court to do here, and I would suggest that it's legally mandated, and I would ask the Court to reverse its conviction and to order a new trial. What was the racial composition of the sitting jury here? I believe there was one or two African Americans. I thought it was ten and two. The government made no reference to that, and I frankly don't think that potentially relates to the issue of whether these jurors should be questioned. I believe it was either one or two African Americans that ended up seated on the jury. Thank you. Thank you, Your Honors.